UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CARLOS MONTOYA,<br><br>              Petitioner,<br><br>v.<br><br>WARDEN KIM JONES,<br><br>              Respondent. | Case No. 3:07–cv-00379-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court in this habeas corpus matter is Respondent's Motion for Summary Judgment. (Dkt. 24.) Also pending is Petitioner's "Motion to Dismiss State Motion for Summary Judgment" (Dkt. 29), which the Court construes as a response to Respondent's Motion.[1]

The Court finds that decisional process would not be aided by oral argument, and it will resolve this matter on the record after consideration of the parties' written submissions. D. Idaho L. Civ. R. 7.1(d). For the reasons that follow, the Court will grant Respondent's Motion, and the Petition will be dismissed.

## BACKGROUND

---

[1] Petitioner has also filed a separate Response, which the Court has considered.

**MEMORANDUM DECISION AND ORDER - 1**

The Idaho Court of Appeals recited the relevant facts in this case as follows:

> Montoya and his wife, Ina Montoya, had several children while living in Utah. The Montoyas' son, Michael Montoya, had a daughter, L.H., with Linda Hallett. In approximately 1995, Michael and Laura were taken into custody in Utah for drug-related charges. As a result, the Montoyas obtained physical custody of L.H., and her half-sister, C.H., from Utah's Health and Welfare Department, and took the girls to live with them in Heyburn, Idaho. The Montoyas eventually legally adopted L.H. and C.H.
>
> In 2000, C.H. moved out of the Montoya household to live with Hallett, in Oregon. Shortly thereafter, Montoya was charged with lewd conduct involving C.H., based on events occurring in the Montoya household between January of 1997 and March of 2000. At trial, twelve-year-old C.H. testified that Montoya repeatedly sexually abused her when she lived in Heyburn. She stated that Montoya had abused her on several occasions, including penetrating her with his finger, forcing her to perform oral sex, and forcing sexual intercourse.

(State's Lodging B-6, p. 2.)

The State charged Montoya with three counts of lewd conduct based specifically on alleged acts of manual-genital, oral-genital, and genital-genital contact with C.H. (State's Lodging A-1, pp. 22-23.) The only witnesses who testified at trial were C.H. and Montoya. (State's Lodging A-2.) Montoya denied that any sexual activity occurred, and implied that C.H. was coached by her mother, Linda Hallett, to fabricate the charges against him so that C.H. could live with Hallett. (State's Lodging A-2, pp. 167-72.)

At the close of the evidence, the trial court instructed the jury that for Montoya to be guilty, the jury must find, in relevant part, that he committed "an act of manual-genital contact or oral genital contact or genital-genital contact *or any other lewd or lascivious act upon or with the body of [C.H.]*." (State's Lodging B-1; Instruction No. 18.)

**MEMORANDUM DECISION AND ORDER - 2**

(Emphasis added.) Montoya was convicted on all three counts, and he was sentenced to three concurrent terms of life in prison without the possibility of parole. (State's Lodging A-1, pp. 48-64.)

On appeal, Montoya argued that Instruction No. 18 broadened the possible acts for which he could be convicted beyond those specified in the charging document, creating a variance between the charging document and the jury's instructions that deprived him of due process of law. (State's Lodging B-3, pp. 4-14.) The Idaho Court of Appeals agreed that the instruction was erroneous, but it found the error to be harmless after concluding that because of Montoya's general denial, "the jury would not have disagreed as to the commission of any of the acts . . . and would still have found Montoya guilty of each count of lewd conduct." (State's Lodging B-6, p. 8.) Montoya's Petition for Review in the Idaho Supreme Court was denied. (State's Lodgings B-7.)

Montoya next filed a Petition for Writ of Habeas Corpus in this Court, raising five claims for relief, and the Court stayed the case pending the completion of ongoing state court post-conviction matters. (Dkt. 8.) After the stay was lifted, the Court granted Respondent's Motion for Partial Summary Dismissal and dismissed, as procedurally defaulted, all claims in the Petition but the variance claim (Claim 5). (Dkt. 22.) Respondent has now submitted an Answer and a Motion for Summary Judgment as to that claim, and Montoya has filed both a "Motion to Dismiss State Motion for Summary Judgment" and a Response to Respondent's Motion. (Dkts. 23, 24, 29, 30.)

The Court has reviewed the parties' filings and the record, and is now prepared to

**MEMORANDUM DECISION AND ORDER - 3**

issue its ruling.

## STANDARD OF LAW

This case is subject to the provisions of the 1996 Anti-terrorism and Effective Death Penalty Act (AEDPA). To be eligible for habeas relief under AEDPA, a habeas petitioner must show that the state court's adjudication of a federal claim resulted in a decision that was "contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court," or that was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

When a state court finds that a constitutional error has occurred, however, but nonetheless concludes that the error does not warrant the reversal of the petitioner's conviction, the federal court must move directly to an assessment of prejudice. *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010). This is because AEDPA did not replace the high standard adopted in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), for determining when a constitutional error is sufficiently grave to upset a state court's judgment on habeas review. *Fry v. Pliler*, 551 U.S. 112, 119 (2007). To find prejudicial error under *Brecht*, the court must be convinced that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623.

In addition, when the error involves a faulty jury instruction, the court must be cognizant that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141,

**MEMORANDUM DECISION AND ORDER - 4**

146–47 (1973). This principle recognizes that "process of instruction itself is but one of several components of the trial which may result in the judgment of conviction," including "testimony of witnesses, argument of counsel, [and] receipt of exhibits in evidence." *Id.* at 147.

## DISCUSSION

Because the Idaho Court of Appeals found that the trial court's instruction created a variance that resulted in a constitutional error but that did not warrant the reversal of Montoya's convictions, the only remaining issue before this Court is whether the error had substantial and injurious effect or influence in determining the jury's verdict. The Court concludes that it did not.

In finding the error to be harmless, the Idaho Court of Appeals noted that "all of the evidence of contacts between Montoya and C.H. was supplied by the victim's testimony" and that Montoya "provided a general denial that any of the alleged incidents occurred." (State's Lodging B-6, p. 8.) Given this state of affairs, the jury had a choice either to believe C.H.'s testimony that she was abused in the various ways that she claimed or to believe Montoya that no sexual activity occurred. It is for that reason the Court of Appeals noted, "[t]here is no reason for the Court to conclude that the jury would have believed some of the incidents alleged by C.H. but not others." (*Id.*) In other words, according to the Court of Appeals, the error did not contribute the jury's verdict in any appreciable way.

This Court agrees with the state court's analysis. Based on the evidence presented

**MEMORANDUM DECISION AND ORDER - 5**

at trial, there is no likelihood the jury could have found, for example, that the State had failed to prove oral-genital, manual-genital, or genital-genital contact – as alleged in the Information – and yet still could have found that Montoya committed some *other* lewd and lascivious act not specified in the charging document. C.H.'s testimony that extensive and repeated sexual contact took place stood in stark contrast to Petitioner's denial that any lewd activity occurred, and the jury was confronted with an all or nothing situation. The instructional error that resulted in a variance with the charging document did not have a substantial influence or effect on determining the jury's verdict, and Montoya is not entitled to habeas relief.

Because there are no claims remaining to be adjudicated, the Petition will be dismissed.

## CERTIFICATE OF APPEALABILITY

As required by Rule 11 of the Rules Governing Section 2254 Cases, the Court now evaluates this case for suitability of a certificate of appealability ("COA"). *See also* 28 U.S.C. § 2253(c).

A habeas petitioner cannot appeal unless a COA has issued. 28 U.S.C. § 2253. A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S.

**MEMORANDUM DECISION AND ORDER - 6**

473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

The Court does not believe that reasonable jurists would debate its determination that four of the claims in the Petition are procedurally defaulted and that Montoya is not entitled to habeas relief on the variance claim. The Court will not issue a COA, though Petitioner is advised that he may still seek one in the Ninth Circuit Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and Local Ninth Circuit Rule 22-1. To do so, he must first file a timely notice of appeal in this Court.

## ORDER

IT IS ORDERED:

1. Respondent's Motion for Summary Judgment (Dkt. 24) is GRANTED.
2. Petitioner's Motion to Dismiss State's Motion for Summary Judgment (Dkt. 29) is DENIED, but the Court has considered Petitioner's arguments in response to Respondent's Motion.
3. A certificate of appealabilty will not issue in this case. If Petitioner files a timely notice of appeal, and not until such time, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals. The district court's file in this case is available for review online at www.id.uscourts.gov.



DATED: **August 10, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge